## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ADVANTAGE ADVERTISING, L.L.C, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | Case No.: CV 02-P-1998-S |
| | } | |
| CITY OF HOOVER, ALABAMA, | } | **ENTERED** |
| | } | **SEP 1 0 2004** |
| **Defendant.** | } | |

### MEMORANDUM OPINION

The court has before it Plaintiff's Motion for Partial Summary Judgment (Doc. # 16) filed April 4, 2003; Plaintiff's Motion for Preliminary Injunction (Doc. # 17) filed April 4, 2003; and Defendant's Motion for Summary Judgment (Doc. # 22) filed May 5, 2003. The motions are fully briefed and were under submission, without oral argument, as of August 23, 2004. (Doc. # 42).[1]

Plaintiff's complaint challenges, on First and Fourteenth Amendments grounds by way of 42 U.S.C. § 1983, the constitutionality of the City of Hoover's scheme for regulating signs. (Doc. # 1). For the reasons outlined below, Defendant's Motion for Summary Judgment is due to be granted because there are no disputed issues of material fact and Defendant has demonstrated that it is entitled to judgment as a matter of law. Plaintiff's Motion for Partial Summary Judgment and Motion for Preliminary Injunction are due to be denied.

The court notes that this case is strikingly similar to at least two other cases filed by ADvantage Advertising, LLC and pending in the Northern District of Alabama. *See ADvantage*

---

[1] The court also has before it Defendant's Motion to Strike Plaintiff's Brief in Support of Plaintiff's Motion for Preliminary Injunction (Doc. # 21) filed May 1, 2003. The only basis articulated by Defendant for striking Plaintiff's brief is that it is 17 pages over the 20-page limitation for briefs set by the predecessor judge assigned to this case. (Doc. # 21, at 2). This motion is due to be denied.

*Advertising, LLC v. City of Pelham*, CV-02-P-2017-S (N.D. Ala. 2002); *ADvantage Advertising, LLC v. City of Alabaster*, CV-02-CO-2117-S (N.D. Ala. 2002).[2]  The court refers to the analysis in the memorandum opinions on summary judgment in those cases as instructive on the issues discussed herein.

## I.      Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment is an integral part of the Federal Rules of Civil Procedure and is the prescribed manner by which claims which do not involve genuine issues of material fact should be resolved.  Fed. R. Civ. P. 56.  The fact that the parties do not agree on every fact is not significant.  The law requires only that "there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 251.  Whether a fact is material is determined by the substantive law applicable to a particular case.  *See Anderson*, 477 U.S. at 248.  Although the nonmovant is entitled to justifiable inferences from the undisputed facts, he cannot rest upon his pleadings.  Rule 56(e) provides,

> When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

---

[2] In fact, the briefs and arguments advanced by Plaintiff in this case are, for the most part, the same as those in *ADvantage Advertising, LLC v. City of Pelham*, also pending before the undersigned.

## II.    Relevant Undisputed Facts[3]

As part of the Hoover Zoning Ordinance and Subdivision Regulations (the "Ordinance"), the City Council of Hoover has established a comprehensive scheme for regulating the permitting, placement, number, construction, size, height, design, operation, and maintenance of signs within the City of Hoover (the "City"). *See* Hoover Zoning Ordinance and Subdivision Regulations, Article X (the "Sign Ordinance").  No sign can be lawfully posted unless it is specifically provided for in the Sign Ordinance and permits must be obtained from City officials prior to posting almost all signs. (Sign Ordinance, at § 1.1).[4]

Plaintiff ADvantage Advertising LLC ("ADvantage"), a limited liability corporation organized under the laws of the State of Georgia, is in the business of buying or leasing land upon which to construct signs to be used for the dissemination of both commercial and noncommercial speech. (Declaration of Dennis DuPont, ¶¶ 3, 4, 14).[5]  ADvantage is co-owned by Dennis DuPont and Donald Danysh. (DuPont Depo. p. 10).  ADvantage entered into lease agreements with owners of several parcels of real property in the City which authorized ADvantage to operate signs or billboards. (DuPont Dec. ¶ 7).  All of these locations are along major roads, such as Interstate 65, and are considered commercial areas. (DuPont Dec. ¶ 7).  At the time the summary judgment papers were submitted to the court, ADvantage had not leased

---

[3] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[4] Some signs are exempted from the Sign Ordinance's permitting requirements, including the following: signs posted by a government or authorized by the City beautification board; official flags; interior signs; plaques; political campaign signs; construction signs; instructional signs; warning signs; holiday decorations; and public signs, symbols, insignias and notices.  (Sign Ordinance, at § 8.2(A)).

[5] In the past, the members of ADvantage have used the company's signs to communicate political and ideological messages as well as nonprofit and community service messages. (DuPont Dec. ¶¶ 4, 14).

any advertising space to advertisers for those billboards.  (DuPont Depo., pp. 44-45).

Pursuant to the City's Sign Ordinance, ADvantage submitted six completed sign permit applications requesting permission to post signs on June 27, 2002, and nine completed applications for permission to post signs on July 25, 2002.  (Doc. # 1, ¶ 17; DuPont Dec. ¶¶ 8, 14).  Specifically, ADvantage requested permission to construct "permanent sign[s] for use as [] off premise, outdoor advertising 'Billboard[s].'"  (Doc. # 50, Ex. 3).  The City denied all of the applications based expressly upon § 7.0(D) of the Sign Ordinance, which prohibits signs communicating "off-premise" messages.  (DuPont Dec. ¶¶ 9, 14).

The Sign Ordinance specifies no time frame in which the City must process permit applications, but it sets forth an appeals process by which sign applicants may appeal the denial of an application. (Sign Ordinance, at §§ 1.2-1.4).  The City denied Plaintiff's sign permit applications in fewer than fourteen days.  (Doc. # 50, Ex. 2).  Plaintiff stated that the amount of time it took for Hoover to rule on ADvantage's applications "was not an abnormal amount of time . . . .  He looked at it and said, we don't allow billboards, and denied it.  He denied it right in front of me. . . ." (DuPont Depo. pp. 250-51).

According to the Sign Ordinance, an "off-premise sign" is any sign – including a billboard –  that "direct[s] attention to a business commodity, service, entertainment, or attraction sold, offered, or existing elsewhere than upon the same property upon which the sign is displayed." (Sign Ordinance, at § 7.0(D)).  With the exception of real estate and rental signs, all other off-premise signs are banned in the City.  (Sign Ordinance, at §§ 7.0(D), 8.3(C)(2), (4)).

Article XI of the Ordinance generally provides, "the provisions of this ordinance shall be considered minimum requirements adopted for the promotion of the public health, safety, morals, convenience, order, prosperity, and general welfare of the community." (Ordinance at

Article XI, § 1.0).   Article XI also includes a Severability clause, stating, "If any section, subsection, clause, provision, or portion of this ordinance shall be held to be invalid or unconstitutional by any court of competent jurisdiction, such holding shall not affect any other section, subsection, clause, provision, or portion of this ordinance which is not in and of itself invalid or unconstitutional." (Ordinance at Article XI, § 2.0).

ADvantage filed suit in this court alleging that the ordinance violates the First and Fourteenth Amendments in several ways:  (1) it is a prior restraint on speech because it requires citizens to seek approval prior to posting signs; (2) the permitting and appeals processes do not guarantee prompt determination; (3) it vests unbridled discretion in city officials by failing to place time limits on city officials' deliberations and by allowing officials discretion in granting or denying permits; (4) several sections of the ordinance unduly burden and restrict speech; (5) it permits officials to regulate commercial and noncommercial speech without a purpose; (6) it restricts more speech than justified by legitimate governmental objectives; (7) it favors commercial over noncommercial speech; (8) it regulates noncommercial signs based upon the content; and (9) it favors the commercial speech of certain businesses or organizations. (Doc. # 1, Counts 1-10).   Plaintiff requests that the court declare all or part of the ordinance unconstitutional, order the Defendant to permit the signs applied for by Plaintiff, and compensate Plaintiff for its losses. (Doc. # 1, Counts 11-12).

III.   Standing[6]

_____

[6] On December 31, 2003, Plaintiff filed a "Notice of Transfer of Interest" informing the court that on June 24, 2003, ADvantage Advertising, LLC had assigned to Advantage Outdoor Advertising, LLC (a Florida corporation) all of its interest in this litigation, including all contracts with Hoover landowners allowing ADvantage to post advertising signs and seek the necessary government permits. (Doc. # 30). At the time of the assignment, Advantage Outdoor Advertising, LLC was not licensed to do business in Alabama or the City of Hoover. (Doc. # 37). Defendant argues that Plaintiff no longer has standing to litigate this case because the assigned contracts with the landowners are necessarily void (given that the assignee was not licensed to do business in

Plaintiff claims that it "is entitled to – and indeed should be encouraged to – challenge each and every unconstitutional aspect of the Sign Ordinance" under the overbreadth doctrine. (Doc. # 17, at 7). "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of the jurisdictional doctrines.'" *FW/PBS v. Dallas*, 493 U.S. 215, 231 (1990). As a threshold matter, then, this Court must determine whether ADvantage has standing to facially challenge the entire Sign Ordinance.

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Allen v. Wright*, 468 U.S. 737, 750-51 (1984)(internal quotations omitted). Standing is a threshold inquiry, requiring the satisfaction of both constitutional and prudential requirements before a federal court may adjudicate a case. Article III, § 2 of the United States Constitution requires that a "case" or "controversy" exist. U.S. CONST. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). The Supreme Court has defined the constitutional requirement in three parts, all of which must be satisfied: (1) an injury-in-fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision. *See Bennett v. Spear*, 520 U.S. 154, 167 (1997). With respect to the prudential considerations of standing, the Court has also identified specific requirements, "such as the general prohibition on a litigant's raising a [third person's] legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's

---

Alabama at the time the contracts were assigned) and therefore Hoover is not required to recognize them. (Doc. # 37, at 2). This situation causes the court concern. Neither ADvantage nor Advantage Outdoor Advertising, LLC owns property in Alabama upon which it could erect signs. (Doc. # 37). Thus, the contracts with the landowners are the only method by which ADvantage was able to file the permit applications that are challenged in this case. Nonetheless, the court will assume, without deciding, that the transfer of interest does not affect Plaintiff's standing to bring this lawsuit.

complaint fall within the zone of interests protected by the law invoked." *Allen*, 468 U.S. at 751; *see also Bennett*, 520 U.S. at 162.

### A.    Overbreadth

One exception to the prudential prohibition on litigating the legal rights of a third person is the "overbreadth doctrine," which applies in First Amendment cases involving non-commercial speech. *Granite State Outdoor Advertising, Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112, 1115 (11th Cir. 2003). The overbreadth doctrine permits third-party standing when a statute is constitutionally applied to the litigant but might be unconstitutionally applied to third parties not before the court. *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634 (1980).

"A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000). To succeed with a facial challenge, the challenger typically must establish that no set of circumstances exists under which the legislation would be valid. *Horton v. City of St. Augustine*, 272 F.3d 1318, 1329 (11th Cir. 2001).  Although the overbreadth doctrine provides an exception to this rule in the limited context of the First Amendment, it has generally been applied only to prior restraints on speech.  *Id.* at 1331; *see Frandsen*, 212 F.3d at 1235-37 (discussing application of overbreadth doctrine).

Plaintiff, relying heavily on cases from other circuits, invokes the overbreadth doctrine and argues that it has standing to challenge the Sign Ordinance because it has a "commercial interest" in the regulations, regardless of whether ADvantage was injured by the abridgement of its own speech. (Doc. # 44, at 4-6). Plaintiff's argument is contrary to clear Eleventh Circuit law on this issue.   The overbreadth doctrine does not allow Plaintiff to avoid the constitutional

requirement of an injury-in-fact. *Clearwater*, 351 F.3d at 1115; *Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 884 (11th Cir.2000); *Virginia v. Am. Booksellers Association Inc.*, 484 U.S. 383, 392-93 (1988). An "injury-in-fact" requires Plaintiff to "show that [it] personally has suffered some actual or threatened injury." *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982)(internal quotations omitted). Although the "injury-in-fact" requirement is "not susceptible of precise definition," *Allen*, 468 U.S. at 751, the injury must be "distinct and palpable," *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979), and not "abstract" or "conjectural." *Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983).

### B.    Injury-in-Fact

The Supreme Court has noted that "[i]n many cases the standing question can be answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases." *Allen*, 468 U.S. at 751-52. Such is the case here. The facts of this case – at least as they relate to the standing issue – are remarkably similar to those in *Granite State Outdoor Advertising, Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112 (11th Cir. 2003).[7]

---

[7] Ironically, Plaintiff's opposition to Defendant's standing argument relies in part on the *Clearwater* district court opinion, which was ultimately reversed on the very issue for which Plaintiff has cited the opinion. The district court held – as Plaintiff argues in this case – that the Plaintiff had standing to challenge "virtually every aspect of the city's sign regulations." (Doc. # 44, at 2).   After Plaintiff filed its brief with this court, the Eleventh Circuit reversed, finding that standing was limited to the specific provision of the sign ordinance under which the plaintiff's permits were denied. *Clearwater*, 351 F.3d at 1115-17. Despite this reversal on a crucial point argued by Plaintiff to this court, Plaintiff never supplemented its brief to notify the court of this subsequent controlling precedent. Plaintiff certainly did not lack opportunity to supplement the record before the court.   In fact, after briefing was complete, Plaintiff submitted "notices of subsequent authority" to the court on eight different occasions – **five** of which were submitted after the Eleventh Circuit's reversal in *Clearwater*. (Docs. # 27, 28, 34, 39, 40, 41, 43, 46). None of these eight subsequent notices mention the Eleventh Circuit's *Clearwater* opinion.  These omissions are even more stunning given that E. Adam Webb, counsel for Plaintiff in this case, was also lead counsel for the Plaintiff in *Clearwater* in both the district court and appellate court and undoubtedly knew of the Eleventh Circuit's reversal of the district court before its opinion was even published.

Just as Plaintiff in this case, Granite State is a Georgia corporation in the business of buying or leasing land upon which to construct signs and billboards to be used for both commercial and non-commercial purposes. *Clearwater*, 351 F.3d at 1114-15. The City of Clearwater – like Hoover in this case – denied each of Granite State's permit applications under a specific provision of Clearwater's city sign ordinance. *Clearwater*, 351 F.3d at 1114-15.[8] Neither ADvantage nor Granite State appealed the denial of its permits. *Compare* (Doc. # 44, at 8) *with Clearwater*, 351 F.3d at 1114. Rather, both companies filed suit in federal court challenging the constitutionality of the city ordinance on First Amendment grounds and requesting injunctive relief. *Clearwater*, 351 F.3d at 1115.

### 1.   The Entire Sign Ordinance

ADvantage – like Granite State – has challenged the constitutionality of various provisions of the Sign Ordinance regulating both commercial and non-commercial signs and

_____

That Plaintiff's counsel did not notify the court of the Eleventh Circuit's definitive opinion on a controlling issue in this case is not only astonishing, but may be in violation of his professional responsibilities. Alabama Rule of Professional Conduct 3.3(a)(3) provides, "A lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." The commentary to the ABA Model Rules, after which Alabama's rule was patterned, explains, "[t]here are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation." *See also* G. Hazard & W. Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 352 (1985) ("The duty to reveal adverse precedent is well established"). Suffice it to say that this matter will be dealt with by separate order.

Finally, the court notes that, although Defendant also relied on the *Clearwater* district court opinion in its summary judgment briefs, none of the points argued by Defendant were reversed by the Eleventh Circuit. Frankly, the court is somewhat surprised that Defendant did not notify the court of the *Clearwater* decision, which is clearly in its favor. However, the court notes that Defendant – unlike Plaintiff – did not have an ethical duty to so notify the court of such legal authority, nor did it notify the court of every subsequent opinion that might be relevant to the issues in this case. Moreover, Defendant's attorneys were not counsel of record in *Clearwater*. Plaintiff's counsel was.

[8] Granite State's permit applications were denied because Granite State applied to construct billboards more than four times the allowable height and ten times the allowable area under Clearwater regulations. *Clearwater*, 351 F.3d at 1115.

dictating when permits are required before certain signs may be erected, including those provisions under which its applications were denied *and numerous other provisions which were not applied to ADvantage personally. Compare Clearwater*, 351 F.3d at 1115 (challenging the entire ordinance even though Granite State's permits were denied under subparts (c) and (e) of § 3-1806.B.1 of the sign ordinance which dictates the allowable area and height, respectively, of a freestanding sign) *with* (Doc. # 15) (challenging the entire ordinance even though ADvantage's permits were denied under § 7.0(D) of the Sign Ordinance which disallows off-premise signs directly attention to something "sold, offered, or existing elsewhere than upon the same property upon which such sign is displayed").  Moreover, both companies challenge the portion of the respective city ordinances setting forth the permitting process and detailing the appeals process to contest denial of a permit. *Compare Clearwater*, 351 F.3d at 1115 (challenging Article 4 of Clearwater's Community Development Code) *with* (Docs. # 15; 44, at 8) (challenging Sign Ordinance, at § 1.4). While ADvantage seeks to assert a facial challenge to the entire Sign Ordinance, the only actual injury it claims to have suffered is the denial of its requests for permits to erect billboards based on § 7.0(D) of the Sign Ordinance.

Although the district court in *Clearwater* initially found that the company had standing to challenge the *entire* sign ordinance on First Amendment grounds, both as applied and under the overbreadth doctrine, the Eleventh Circuit *reversed*.  The Eleventh Circuit found that the only harm that Granite State personally suffered was under § 3-1806.B.1 of the Clearwater Community Development Code because it was the only provision of the ordinance under which Granite State's permits were denied and the only provision giving rise to an alleged injury-in-fact. *Clearwater*, 351 F.3d at 1115-17.[9]  Under the authority of *Clearwater*, this court finds that

---

[9] The Court did not reach the overbreadth doctrine with respect to any provision other than § 3-1806.B.1, because it determined that Granite State lacked standing to challenge any other

ADvantage has standing in this case to challenge *only* the constitutionality of § 7.0(D) of the Sign Ordinance because it was the only provision of the ordinance under which ADvantage's permits were denied.[10]  Accordingly, the court's analysis from this point forward is limited to this provision unless expressly stated otherwise.

### 2.    Permitting and Appeals

Moreover, this court finds, like the Eleventh Circuit in *Clearwater*, that Plaintiff does not have standing to challenge the portion of the ordinance addressing the City's permitting and appeals process.  *Clearwater*, 351 F.3d at 1117-18. Like Granite State, ADvantage has admitted that it did not avail itself of the allegedly unconstitutional appeals process.  (Doc. # 44, at 8). Although ADvantage did not need to complete the appeals process in order to bring a claim under § 1983,  *Tallahassee Memorial Reg. Med. Ctr. v. Cook*, 109 F.3d 693, 702 (11th Cir. 1997) (finding it "well established that a claim under 42 U.S.C. § 1983 cannot be barred by a plaintiff's failure to exhaust state remedies"), there is no question that Plaintiff's failure to utilize the appeals process impedes its standing to litigate the issue.  Without an injury-in-fact, Plaintiff cannot challenge this portion of the Sign Ordinance.

_____

provisions of the City's sign ordinance that did not give rise to an injury-in-fact. *Clearwater*, 351 F.3d at 1115-17.

[10] The court notes that most of Plaintiff's claims in this case concern other provisions of the Sign Ordinance and thus need not be addressed by the court, including all of the following claims inasmuch as they relate to provisions other than § 7.0(D): (1) the ordinance vests unbridled discretion in city officials by failing to place time limits on city officials' deliberations and by allowing officials discretion in granting or denying permits; (2) several sections of the ordinance unduly burden and restrict speech; (3) the ordinance permits officials to regulate commercial and noncommercial speech without a purpose; (4) the ordinance restricts more speech than justified by legitimate governmental objectives; (5) the ordinance favors commercial over noncommercial speech; (6) the ordinance regulates noncommercial signs based upon the content; and (7) the ordinance favors the commercial speech of certain businesses or organizations.  (Doc. # 1, Counts 1-10).

### 3.   Time Limitations for Processing Applications

Plaintiff alleges that the Hoover permitting process does not guarantee prompt determination and that it vests unbridled discretion in city officials by failing to place time limits on city officials' deliberations. (Doc. # 1).   Plaintiff's arguments fail both procedurally, as discussed below, and on their merits, as discussed *infra* Section IV.C.

Plaintiff lacks standing to challenge the lack of time limitations in the Sign Ordinance. ADvantage argues – like Granite State –  that the Sign Ordinance is constitutionally defective because city officials have an unlimited amount of time to decide whether to grant or deny a permit application. *Clearwater*, 351 F.3d at 1117-18.   The Eleventh Circuit rejected this argument in *Clearwater*, finding that "[s]uch an argument, by itself, does not create Article III standing. Granite State has neither alleged nor shown how the City's permitting and appeals procedure has injured Granite State. To the contrary, the record shows that Granite State's permits were denied within a reasonable time: the same day they were submitted." *Clearwater*, 351 F.3d at 1118.

Here, the City denied Plaintiff's sign permit applications in fewer than fourteen days, (Doc. # 50, Ex. 2), which is undoubtedly a reasonable time period. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 324 (2002) (upholding requirement that permits be considered in 28 days). Moreover, Plaintiff admitted that the amount of time it took for Hoover to rule on its applications "was not an abnormal amount of time . . . . He looked at it and said, we don't allow billboards, and denied it.  He denied it right in front of me. . . ." (DuPont Depo. pp. 250-51). Because Plaintiff was not injured by the lack of time limitations for Hoover to render permitting decisions, Plaintiff lacks standing to challenge the time limitations issue. *See Clearwater*, 351 F.3d at 1118; *Granite State Outdoor Advertising, Inc. v. City of St. Petersburg, Fla.*, 348 F.3d

.

1278, 1282 (11th Cir. 2003) ("We realize City officials could potentially delay the processing of certain permit applications and thereby arbitrarily suppress disfavored speech. We will not, however, address hypothetical constitutional violations in the abstract.").

### 4.    Exemptions from, and Exceptions to, the Permitting Requirements

Plaintiff claims that the City's Sign Ordinance impermissibly discriminates among certain types of speech by exempting some kinds of noncommercial signs from the permitting requirements, *i.e.*, signs posted by a government or new business, signs awarded by the City beautification board, official flags, interior signs, plaques, political campaign signs, construction signs, instructional signs, warning signs, holiday decorations, and public signs, symbols, insignias and notices.  (Sign Ordinance, at § 8.2(A)-8.3(A)-(B)).  Put another way, Plaintiff argues that those exemptions – in  addition to special sign allowances for government and certain types of businesses, *i.e.*, automobile dealerships and gasoline service stations – violate the equal protection clause of the Fourteenth Amendment.  (Sign Ordinance, §§ 8.2(A)-(B), 8.3(A)-(B)). Plaintiff maintains that the "special status" given to certain groups shows an "'an impermissible favoritism for certain types of noncommercial speech'" and leaves "'open the door to abuse of discretion in determination of who qualifies for the exception.'" (Doc. # 17, at 34 (citing *National Advertising Co. v. Town of Babylon*, 703 F.Supp. 228 (E.D.N.Y. 1989)).

Standing to challenge these various provisions of the Sign Ordinance is problematic for Plaintiff under *Clearwater*.  The ordinance in *Clearwater* contained similar exemptions from permitting and special exceptions for signage, and Plaintiff unsuccessfully challenged them on First and Fourteenth Amendment grounds at the district court level. *Clearwater*, 213 F.Supp.2d at Appendix 1.  The Eleventh Circuit did not consider these arguments, presumably because of its finding that the plaintiff had standing to challenge only the provision under which its permits

13

were denied. *Clearwater*, 351 F.3d at 1115-17. For the same reasons, Plaintiff lacks standing to challenge the exemptions from permitting in this case.[11]

Accordingly, having determined that ADvantage has standing to challenge only the constitutionality of § 7.0(D) as applied to it and, under the overbreadth doctrine, as applied to speech, the court turns to the analysis of the specific provision under which ADvantage's permits were denied.

**IV.    Constitutionality of Section 7.0(D)**

In *Metromedia Inc. v. City of San Diego*, 453 U.S. 490 (1981), the Supreme Court recognized that "[b]illboards, . . . like other media of communication, combine communicative and non-communicative aspects," and, while the government may have legitimate interests in controlling the non-communicative aspects of the medium, the First and Fourteenth Amendments foreclose a similar interest in controlling the communicative aspects. *Metromedia*,

---

[11] Notwithstanding, this challenge also fails on the merits. Although Plaintiff's brief points to similar exemptions and exceptions that have been invalidated by other circuits (Doc. # 17, at 35), this Circuit has twice rejected this identical argument, upholding such exemptions as constitutional. *Coral Springs Street Systems, Inc. v. City of Sunrise*, 371 F.3d 1320, 1346 (11th Cir. 2004); *Messer v. City of Douglasville*, 975 F.2d 1505, 1513 (11th Cir. 1992). As the Eleventh Circuit has noted:

> A panel of this Court explicitly rejected a nearly identical challenge in *Messer v. City of Douglasville, Georgia, 975 F.2d 1505* (11th Cir.1992). Messer attacked a sign ordinance exempting five kinds of signs from permitting requirements. We explicitly distinguished between exemptions from permitting requirements and exemptions from outright prohibitions such as those in *Metromedia*: "[The] exemptions [in *Messer*] are not exemptions from a general ban of all off- premise billboards, but from permitting requirements and permits fees . . . ." Simply put, a permit requirement is wholly different from a ban, and exemptions from the former are correspondingly different from-- and far less suspect than--exemptions from the latter.

*Coral Springs*, 371 F.3d at 1346; *see also Clearwater*, 213 F.Supp.2d at 1340. Moreover, Plaintiff has not demonstrated that it is in a suspect class, nor that the Sign Ordinance in this case classifies persons or entities based upon suspect classes, nor even that the construction of billboards for a commercial purpose is a fundamental right protected by the Constitution. This claim cannot withstand summary judgment.

453 U.S. at 502.  Where a governmental regulation of the non-communicative aspects of a medium impinges in some degree on the communicative aspects of that medium, the courts must reconcile the government's regulatory interests with the individual's right to expression. *Metromedia*, 453 U.S. at 502.

> That task is easier said than done.  As noted by the district court in *Clearwater*:
>
> It is truly a Herculean task to wade through the mire of First Amendment opinions to ascertain the state of the law relating to sign regulations, beginning with the Supreme Court's leading decision on billboard regulations in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 570, (1981) (plurality decision) (Rehnquist, J., dissenting, who referred to the plurality decision as a "virtual Tower of Babel, from which no definitive principles can be clearly drawn") . . . . [T]here is much variety and diversity of opinions in this area (in addition to sign ordinances, courts have reviewed First Amendment challenges to adult entertainment clubs, tobacco advertising and the noise volume of music concerts), suggesting that constitutional law on this subject is far from clear.

*Clearwater*, 213 F.Supp.2d at 1327.  Such clarity is similarly elusive in this case.

Nonetheless, it is well settled that "the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984).  In this case, ADvantage relies on *Metromedia* and its progeny for the argument that Hoover's Sign Ordinance is unconstitutional as an impermissible, content-based ordinance that cannot survive strict scrutiny review.  The law is clear, however, that an ordinance need only be subject to strict scrutiny if it serves to regulate a viewpoint or amounts to censorship.  *Vincent*, 466 U.S. at 804 (refusing to apply strict scrutiny because "there is not even a hint of bias or censorship in the City's enactment or enforcement of this ordinance. There is no claim that the ordinance was designed to suppress certain ideas the City finds distasteful or that has been applied to [Plaintiff] because of the views that they express").

Regulation of speech through sign ordinances that are viewpoint-neutral is permissible, provided that the regulation is narrowly tailored to further significant government interests. *Metromedia*, 453 U.S. at 511-12, 516. Viewpoint-neutral ordinances are subject to intermediate – not strict – scrutiny, which requires the government to demonstrate that: "1) it has the constitutional power to make the regulation, 2) an important or substantial government interest unrelated to the suppression of free speech is at stake, and 3) the ordinance is narrowly drawn to achieve its desired ends, leaving other channels for the communication of information." *Messer*, 975 F.2d at1510; *see also Vincent,* 466 U.S. at 805.

### A.    Content-based vs. Content-neutral

Thus, the first issue before the court is whether the provision in question seeks to regulate speech according to its content or whether it is content-neutral.  This differentiation is not always easy to make.  Again, as the district court in *Clearwater* noted:

> What makes the content-based versus content-neutral distinction so difficult in cases involving sign ordinances is that, by their very nature, signs are speech and thus can only be categorized, or differentiated, by what they say. This makes it impossible to overlook a sign's "content" or message in attempting to formulate regulations on signage and make exceptions for distinctions required by law (*i.e.*, for sale signs) or for those signs that are narrowly tailored to a significant government interest of safety (*i.e.*, warning or construction signs).

*Clearwater*, 213 F.Supp.2d at 1333.

Section 7.0(D) disallows "Off-premise billboards and signs which direct attention to a business commodity, service, entertainment or attraction sold, offered, or existing elsewhere than upon the same property upon which such sign is displayed." (Sign Ordinance, at  § 7.0(D)).  The court finds *Messer v. City of Douglasville, Ga.*, 975 F.2d 1505 (11th Cir. 1992), to be similar to the case at hand and instructive on the issue of content-neutrality in off-premise sign regulations. In *Messer*, Plaintiff argued that an ordinance favoring on-premise over off-premise signs

promoted commercial speech over noncommercial speech and violated the First Amendment as interpreted by *Metromedia*, 453 U.S. at 511-12 (finding that regulation favoring on-site commercial advertising over off-site commercial advertising was permissible, but regulation favoring on-site commercial over on-site non-commercial speech was impermissible).   The Eleventh Circuit rejected this argument, finding instead that an ordinance prohibiting off-premise signs is viewpoint-neutral because it regulates signs not based on the viewpoint of the speaker, but based on the location of the signs. *Messer*, 975 F.2d at 1509.

Such a finding is directly applicable to the Ordinance in this case.  The off-premises/on-premises distinction of § 7.0(D) is related solely to location, not content.  Moreover, Plaintiff's permits in this case make no reference to the proposed sign content (Doc. # 50, Ex. 3), and there is no indication that City officials considered content in their decision to deny Plaintiff's permits. In fact, at the time the summary judgment papers were submitted to the court, ADvantage still had not leased any advertising space to advertisers for the billboards at issue.  (DuPont Depo., pp. 44-45).

The *Messer* court also concluded that such an ordinance regulating off-premises signs does not favor commercial over non-commercial speech, and neither does it favor non-commercial over commercial speech.

> [T]here is simply no basis for equating on-premise signs with commercial speech, and off-premise signs with noncommercial speech.  A noncommercial enterprise would be able to put up a sign bearing a noncommercial message as long as it relates to any activity on the premises.  Similarly, a commercial enterprise would be able to put up a sign bearing a noncommercial message which related to any activity on the premises.  For example, an auto mechanic's garage would be able to put up a noncommercial message relating to the recycling of used motor oil.

*Messer*, 975 F.2d at 1509. *Accord Wheeler v. Commissioner of Highways*, 822 F.2d 586, 591 (6th Cir. 1987)(finding that a distinction between onsite and offsite noncommercial signs is

constitutionally permissible); *National Advertising Co. v. Chicago*, 788 F.Supp. 994, 997-98 (N.D.Ill.1991) ("the distinction between on-site and off-site advertising is not aimed toward the suppression of an idea or viewpoint"). Because the *Messer* court found the regulation to be content-neutral, it applied the intermediate scrutiny test requiring a narrowly tailored restriction furthering significant government interests. *Messer*, 975 F.2d at 1510.

Five years after *Messer*, another Eleventh Circuit panel considered the constitutionality of an ordinance substantially similar to the one before this court today. In *Southlake Property Assoc. Ltd. v. City of Morrow, Ga.* 112 F.3d 1114 (11th Cir. 1997), the challenged sign ordinance prohibited billboards, defined as "any sign which advertises a commodity, product, service, activity or any other person, place, or thing, which is not located, found or sold on the premises upon which such sign is located. *Morrow,* 112 F.3d at 1117. The Sign Ordinance in this case is virtually identical, prohibiting "Off-premise billboards and signs which direct attention to a business commodity, service, entertainment or attraction sold, offered, or existing elsewhere than upon the same property upon which such sign is displayed." (Sign Ordinance, at § 7.0D).  The Eleventh Circuit in *Morrow* held that the "definition of billboard as an offsite advertising sign does not include noncommercial speech as such speech is always onsite." *Morrow,* 112 F.3d at1119.  *Morrow*'s conclusion that noncommercial speech is inherently "onsite" is wholly consistent with – albeit more forward than – *Messer*'s finding that "there is simply no basis for equating on-premise signs with commercial speech, and off-premise signs with noncommercial speech." 975 F.2d at 1509.  The *Morrow* court, having determined that, by definition, the ordinance regulated only commercial speech, applied the *Central Hudson* test for commercial speech and found the ordinance constitutional. *Morrow*, 112 F.3d at 1119; *see also Coral Springs Street Systems, Inc. v. City of Sunrise*, 371 F.3d 1320,1344 (11th Cir. 2004) (citing

*Morrow* with approval).

The *Central Hudson* analysis utilizes a four-part test for evaluating the constitutionality of ordinances regulating commercial speech: (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 562-66 (1980). Applying the law of *Morrow* to this case, the regulation which restricts only offsite signs could not, by definition, restrict noncommercial speech and thus would be subject to the *Central Hudson* test.

Whether the court applies the "viewpoint-neutral" test or the *Central Hudson* test is of no moment, however. Because the court finds, as discussed in Section IV. B-C *infra*, that the ordinance in this case fulfills the "viewpoint-neutral" requirement of a "significant" government interest, there can be no doubt that it would satisfy the *Central Hudson* standard of "substantial" interest, which is similar to the viewpoint-neutral standard, if not the same. *See, e.g., Capobianco v. Summers,* 377 F.3d 559 (6th Cir. 2004) ("[W]e see no basis for concluding that [] "significant governmental interest" and *Central Hudson*'s "substantial" government interest are materially different.").

Accordingly, consistent with *Messer* and *Morrow*, the court finds that the § 7.0(D) of the Sign Ordinance is content-neutral in its regulation of off-premise billboards and signs.

**B.     Narrowly Tailored to Serve Substantial Government Interests**

Because the ordinance is viewpoint-neutral, the court must now decide if substantial government interests justify this restriction, and if so, whether the restriction is narrowly

tailored. Time, place and manner restrictions are permissible if "they are justified without reference to the content of the regulated speech, ... serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771 (1976).

Article XI of the Ordinance states the following regarding the interpretation and general purpose for the Sign Ordinance's creation in this case:

> In their interpretation and application the provisions of this ordinance shall be considered minimum requirements adopted for the promotion of the public health, safety, morals, convenience, order, prosperity, and general welfare of the community. Where other ordinances or regulations heretofore adopted or which may be adopted hereafter impose greater restrictions than those specified herein, compliance with such other ordinances or regulations is mandatory.

(Ordinance, Article XI Sec. 1.0) Courts have consistently held that similar government interests are sufficiently "substantial" to pass constitutional muster. *See Metromedia*, 453 U.S. at 511-12 (finding that traffic safety and appearance of the city were substantial government goals, and ordinance, which did not prohibit all billboards but allowed onsite advertising and some other specifically exempt signs, was not broader than necessary); *Vincent*, 466 U.S. at 804 (holding that a city's aesthetic interests are sufficiently substantial to provide an acceptable justification for a content-neutral prohibition against the use of billboards); *Messer*, 975 F.2d at 1510 ("[It is] well settled that both traffic safety and aesthetics are substantial governmental goals."); *Morrow*, 112 F.3d at 1116 (recognizing rights of public to "clean, aesthetically pleasing and safe business thoroughfares"); *Harnish v. Manatee County, Fla.* 783 F.2d 1535 (11th Cir. 1986) (finding that "prohibition of portable signs to eliminate aesthetic blight passed muster under the First Amendment"). Moreover, this ordinance is sufficiently narrowly drawn, leaving open ample channels of communication of noncommercial messages, including any onsite communications. *See, e.g., Metromedia*, 453 U.S. at 511-12. Accordingly, the court finds that §

7.0(D), a viewpoint-neutral regulation, passes constitutional muster because it is sufficiently narrowly tailored to serve substantial government interests.

### C.    Prior Restraint / Discretion of the City Officials

Plaintiff generally alleges that the ordinance at issue in this case, requiring a permit before a sign can be erected, constitutes a unconstitutional prior restraint on speech because it lacks required procedural safeguards such as time limitations and limited discretion of city officials in granting or denying permits. (Doc. # 1). As discussed in Section III.B.3, *supra*, Plaintiff lacks standing to challenge the lack of time limitations governing deliberations of city officials.  In any event, Plaintiff's prior restraint "procedural safeguard" arguments also fail on their merits.

The extent to which procedural safeguards – such as time limits – are required is governed by whether the regulation in question is a content-based prior restraint on speech or content-neutral.  Two cases are instructive on this issue.  First, in *Freedman v. Maryland*, 380 U.S. 51 (1965), the Supreme Court considered a system of prior restraint for motion pictures that required every film be submitted to a Board of Censors and subject to rejection and censorship if the Board considered the film "obscene"or "tending, in the judgment of the Board, to debase or corrupt morals or incite to crimes." *Freedman*, 380 U.S. at 52, n. 2.  The Court recognized that such a content-based censorship system must contain the following procedural safeguards in order to avoid constituting an invalid prior restraint: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 227 (1990) (citing *Freedman*, 380 U.S. at 58-60).

The Supreme Court again considered the applicability of the *Freedman* safeguards in *Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002). In *Thomas*, the Court considered a regulation requiring a permit to hold a public event in a park. *Thomas*, 534 U.S. at 320-23. The Court clarified that the content-neutral permitting scheme in *Thomas* was quite different from the "core abuse" censorship at issue in *Freedman*. *Id.* at 320-23. Accordingly, the Court held that the "extraordinary procedural safeguards" required in *Freedman* were inapplicable. *Id.* at 323-24. Importantly, "the Court never stated time limits were per se required for a permitting scheme to be valid." *St. Petersburg,* 348 F.3d at 1282. Instead, the Court held that a regulation must incorporate "adequate standards to guide the official's decision and render it subject to judicial review." *Thomas*, 534 U.S. at 323-24.

Plaintiff alleges that the provision at issue in this case is unconstitutional and akin to a *Freedman* prior restraint on speech. (Doc. # 1). Plaintiff's argument is flawed from its inception. In fact, the provision at issue in this case is not at all similar to the content-based censorship system in *Freedman*. Rather, § 7.0(D), as discussed in Section IV.A *supra*, is a content-neutral, nondiscretionary provision that, pursuant to *Thomas,* is not subject to the *Freedman* requirements. *See also Staub v. Baxley*, 355 U.S. 313, 322 (1958); *Horton v. City of St. Augustine*, 272 F.3d 1318, 1332 (11th Cir. 2001). Accordingly, § 7.0(D)'s lack of time limitations for rendering decisions on permitting applications is not constitutionally fatal. So long as § 7.0(D) contains "adequate standards to guide the official's decision and render it subject to judicial review," it passes muster. *Thomas*, 534 U.S. at 323-24.

It does. Section 7.0(D) affords no undue discretion to the permitting authority. *See Clearwater*, 351 F.3d at 1117. Section 7.0(D) contains a nondiscretionary test for determining whether a permit should be granted or denied – does the sign "direct attention to [something]

sold, offered, or existing elsewhere than upon the same property upon which such sign is displayed?" (Sign Ordinance, at § 7.0D). There is no room for discretion when the only issue to be considered under this provision is the location of the sign. As noted by the Eleventh Circuit with respect to a similar, content-neutral regulation, "City officials may not exercise unlimited discretion. They can only process permit applications based upon objective criteria set forth in the ordinance. No official is able to reject an application simply because of the proposed content. Moreover, anyone adversely affected by the ordinance may resort to either administrative review or [] the courts." *St. Petersburg*, 348 F.3d at 1282. Accordingly, the court finds that § 7.0(D) contains "adequate standards to guide the official's decision and render it subject to judicial review" as required by *Thomas*. Because the only provision that Plaintiff has standing to challenge is content-neutral and passes constitutional muster under either *Central Hudson* or the "viewpoint-neutral" test, Defendant's motion for summary judgment is due to be granted.

## V.    Conclusion

For the reasons stated above, Defendant's motion for summary judgment is due to be granted. The court finds that no genuine issues of material fact remain for trial and that Defendant is entitled to judgment as a matter of law. Plaintiff's motions for partial summary judgment and preliminary injunction are due to be denied. A separate Final Judgment will be entered.

**DONE** and **ORDERED** this _____10th_____ day of September, 2004.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE